# CHARLESTON.

F. W. RIGGS, ADM'R. ETC. *v.* MRS. E. G. STRANK *et\ als.*

Submitted November 15, 1921.    Decided November 22, 1921.

1. GIFTS, CAUSA MORTIS.

Clear and uncontradicted proof that a man on his death-bed, only a day or two before his death and with knowledge of impending death, caused his property, consisting of a note and a sum of money in the hands of his banker, obviously exceeding the probable charges against his estate by a considerable amount, to be delivered to his niece, with the declaration that he wanted her to have the money to pay up his expenses, after having given to her, two or three days earlier, a check for the money and told her to get it and pay his bills, consisting of medical, hospital and funeral charges, and also that he intended her to have the note and the residue of the money after such payments, amply suffices to establish a gift *causa mortis*, of the note and the money, subject to such charges, and precludes the theory of a delivery thereof upon a trust to pay such charges and account for the residue with the estate of the decedent.  (p. 576).

2. SAME—*Evidence, Declarations and Acts.*

Such previous declaration and acts are admissible not only as primary evidence of such gift, but also as tending to solve the ambiguity, if any, raised by the declaration attendant upon the delivery of the money and note.  (p. 576).

(LIVELY, JUDGE, absent.)

Appeal from Circuit Court, Cabell County.

Suit by F. W. Riggs, administrator, etc., against Mrs. E. G. Strank *et als.*  Decree for plaintiff and defendant appeals.

*Reversed; Injunction dissolved; Bill dismissed.*

*F. W. Rigg,* for appellee.

*J. W. Perry,* for appellant.

POFFENBARGER, JUDGE:

By perpetuation of an injunction awarded upon the plaintiff's bill, and requirement of payment and delivery of the sum of money and note in controversy, to the plaintiff, by the Day and Night Bank of Huntington, the depository thereof, the decree complained of denied the validity of an alleged gift of said fund and note to the defendant Mrs. Strank. Whether the trial court's findings against the validity of the claim of gift is incorrect, or lacks foundation in law and evidence to such an extent as to justify reversal here, is the sole inquiry raised by the appeal.

The gift, if any, was made in contemplation of death, by B. F. Reynolds, the uncle of Mrs. Strank. Reynolds was a bachelor and his next of kin were six brothers and sisters. For a period of time not disclosed, he seems to have resided with one Joe Connor, and, upon the death of Connor, with his sister, Mrs. C. S. Wallace, and her husband, until less than a year before the date of the alleged gift and his death. On account of some trouble between him and his sister or her husband, he left their home and had his trunk and personal belongings moved to the home of Mrs. Strank in the City of Huntington, though it does not appear that he at any time regarded that place as his residence or home. The testimony tends to prove that he visited the home of Mrs. Strank frequently. In addition to his trunk, its contents and some other personal effects, he had eight hundred dollars on deposit in the Bank of Milton, W. Va. and a note for the sum of three hundred dollars, executed by his brother-in-law, C. S. Wallace, which also the bank held for collection.

The alleged gift had its beginning in a transaction at the home of Mrs. Strank, on a Sunday morning in December, 1919, and, if consummated, the consummation occurred about a week later, at the Guthrie Hospital in the City of Huntington, to which Reynolds went on the afternoon of that Sunday, for treatment. Two witnesses, cousins of Mrs. Strank, and her husband and wife, testify that on said Sunday

morning, Reynolds had Mrs. Strank get for him his bank pass-book and check-book, and, after having inspected them, told her he had $800.00 in the bank and he wanted her to check that out to pay his doctor's bills and that, after payment of the doctor's bills and his funeral expenses, he wanted her to have what should be left. They say he told her about the note also and said he wanted her to have the money represented by it, when it should become due. One of these witnesses, the husband, says Reynolds at the time of this conversation, made a remark to the effect that he did not expect to live long. On the date of this conversation, Reynolds drew his check in favor of Mrs. Strank for the $800.00, and delivered it to her, although neither of the two witnesses above mentioned saw him do so. Her brother swears he did it that day and told her he wanted her to have everything he had after payment of his debts. Shortly after the date of the conversation, she and her father, T. C. Reynolds, appeared at the Bank of Milton with the check, which appeared to bear the genuine signature of B. F. Reynolds. Nevertheless, the bank officials declined to honor it, on account of directions previously given them by Reynolds, not to honor any check, because he expected always to apply in person for his money, when he should need or want it. At a conference between the cashier and the vice-president, James H. Harshbarger, it was arranged that the latter should take $800.00 of the bank's money and the $300.00 note and accompany Mrs. Strank to the hospital and there let Reynolds direct the disposition thereof. . On their arrival, they found him conscious but weak. He recognized them and directed delivery of the money and the note to Mrs. Strank. As to this there is no controversy. Retiring from his bed side to another room, or to a corridor, Harshbarger delivered the money and the note to Mrs. Strank.

The plaintiff in his bill proceeds upon the theory, however, that the money and note were delivered to her as trustee, with directions to pay his medical, hospital and funeral expenses and divide the residue among his next of kin or pay it over to his administrator. The only basis for this contention is the fact that Reynolds said to Harshbarger, in connection

with his direction to deliver the money and note to Mrs. Strank, that he wanted her to have the money to pay up his expenses. The testimony of E. A. Reynolds, a brother, and Alva Reynolds, a nephew, is to the same effect. None of these witnesses say he gave any direction as to what should be done with any residue there might be, after payment of debts and expenses. All of them agree, that the direction to deliver the money and note to Mrs. Strank was made in contemplation of impending death.

Mrs. Strank deposited the money to her credit in the Day and Night Bank and delivered the note to that bank for collection. Seeking an adjudication of title to the property in the administrator, the bill made her and the bank parties defendant and prayed an injunction against disposition thereof, pending the suit, which was awarded. Before it was awarded, disbursements had been made on account of medical and funeral expenses, which left a balance of $495.25.

The delivery in contemplation of death being clearly and fully proved and undisputed, the only remaining subject of inquiry is the purpose or intent of the delivery. The main contention of the plaintiff is that the property was delivered only upon a trust to pay expenses and that of the defendant that it was delivered by way of absolute gift subject to payment of medical, hospital and funeral expenses, out of it. As to delivery and the occasion thereof, the rule requiring full and clear proof of a *donatio causa mortis* has been complied with. While the drawing and delivery of the check for the money may not amount to an actual or symbolical delivery thereof, they are very strong evidence of intent to make the delivery subsequently effected, and they are corroborative of the testimony of the witnesses to the declarations alleged to have been made at the home of Mrs. Strank. They were acts by way of effect to execute the intention then and there expressed, and, if expressed in the terms given by those witnesses, it clearly excluded the theory of a trust. They are not contradicted by any person nor in any way, and their statements are corroborated by acts in execution of the intention said by them to have been expressed. G. T. Reynolds, brother of the decedent and father of the donee, testi-

fies that his brother had told him in September, 1919, of his intention to give all he had to Mrs. Strank, and, at the hospital, on Monday before his death, that he had given her his money, the note and his bedding.    All of this evidence was clearly admissible.    *Matter of Swade*, 65 N. Y. App. Div. 592; *Rhodes* v. *Childs*, 64 Pa. St. 18; *Bank* v. *Mitchell*, 18 R. I. 739; 20 Cyc. 1247; 14 Am. & Eng. Ency. L. 1068; 12 R. C. L., p. 971.    It is admissible not only as primary evidence to prove the gift, but also to clear up any ambiguity the expression, "I want her to have that money to pay up my expenses," may have introduced.    *Smith* v. *Maine et al.*, 25 Barb. (N. Y.), 33.    These declarations of intention, taken in connection with the indisputable fact of delivery of possession, said to be the strongest and most essential element in a gift *causa mortis*, *Dickeschied* v. *Bank*, 28 W. Va., 340, are amply sufficient to overcome any mere inference arising from the expression just quoted.    To them must be added the circumstances that the cash alone far exceeded the amount necessary to pay such expenses and that the money evidenced by the note would not be needed for payment thereof. Nothing more than a mere inference of a delivery upon a trust can arise from that expression.    Neither it nor any other language used on the occasion of the delivery gave any direction as to money remaining after payment of expenses.    All of the witnesses called both for and against the plaintiff, who heard the direction to make the delivery, agree that the declaration of purpose was limited to expenses and silent as to what might remain after payment thereof.    The omission in it is supplied by the delivery of money and property far in excess of the requirement for expenses and the antecedent declarations of intention to make an absolute gift.

Being clearly of the opinion that an absolute gift, subject to the charges above mentioned, has been clearly and fully proved, we will reverse the decree complained of, dissolve the injunction and dismiss the bill.

*Reversed; Injunction dissolved; Bill dismissed.*